In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 25-1311 & 25-1392

REGINALD L. CHAPMAN,

*Plaintiff-Appellant/Cross-Appellee*,

*v.*

EILEEN O'NEILL BURKE,

*Defendant-Appellee/Cross-Appellant*.

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22-cv-5510 — **Jeffrey I. Cummings**, *Judge*.

———————————

ARGUED FEBRUARY 18, 2026 — DECIDED AUGUST 13, 2026

———————————

Before SCUDDER, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges*.

PRYOR, *Circuit Judge*. An Illinois state court jury convicted Reginald Chapman of murdering Angela Butler and her son, C.B. Years later, in Illinois state court, Chapman sought post-conviction DNA testing of evidence law enforcement recovered during its investigation. To do so, he filed suit under 725 Ill. Comp. Stat. 5/116-3, which provides the statutory framework under Illinois law by which a person can seek post-

conviction DNA testing of evidence. The Illinois state court
denied his motion, the state appellate court affirmed, and the
Illinois Supreme Court denied review.

Chapman then sued Eileen O'Neill Burke, the Cook
County State Attorney, in federal court, invoking 42 U.S.C.
§ 1983 to challenge the facial constitutionality of 725 Ill.
Comp. Stat. 5/116-3 under the Fourteenth Amendment's Due
Process Clause and the Sixth Amendment's right to a jury
trial. The district court dismissed Chapman's complaint for
lack of subject matter jurisdiction on *Rooker-Feldman* grounds,
pursuant to Rule 12(b)(1) of the Federal Rules of Civil Proce-
dure. *Rooker-Feldman*, a narrow doctrine, reinforces the bed-
rock principle that Congress authorized only the Supreme
Court with appellate jurisdiction to review state court judg-
ments, divesting lower federal courts of subject matter juris-
diction over such cases. *T.M. v. Univ. of Maryland Med. Sys.
Corp.*, 146 S. Ct. 1739, 1746–48 (2026).

Chapman appeals, arguing the district court erred in dis-
missing his complaint for lack of subject matter jurisdiction
under *Rooker-Feldman*. Burke cross-appeals. In addition to
contending *Rooker-Feldman* bars Chapman's complaint, Burke
claims Chapman lacks standing to sue. Because Chapman has
standing and *Rooker-Feldman* does not prevent the district
court from exercising subject matter jurisdiction, we reverse.

## I.    BACKGROUND

### A.  Chapman's Murder Convictions

Our account of the following facts draws from Chapman's
second amended complaint in this federal lawsuit and the Il-
linois Supreme Court's recitation of facts in its affirmance of

Chapman's convictions on direct review. *See People v. Chapman*, 743 N.E.2d 48 (Ill. 2000).

On September 4, 1994, law enforcement found Angela Butler dead, floating facedown in the Calumet River. When found, her body was bloated, discolored, decomposing, wrapped in an electrical cord, and attached to 75 pounds of free weights. Eight days later, on September 12, 1994, they found C.B.'s body, also wrapped in electrical cords and attached to 40 pounds of free weights, in the same river. Law enforcement's search for the perpetrator led them to Chapman, a man Butler previously dated and who had fathered C.B. After further investigation, the state charged Chapman in Illinois state court with a variety of crimes, including, as relevant here, two counts of first-degree murder for the deaths of Angela and C.B.

In 1998, Chapman went to trial. The government argued Chapman killed Butler and C.B. at his apartment because he was jealous that Butler and C.B. were moving to Iowa so that they could live with Butler's new fiancé. After murdering them, Chapman placed their bodies into the trunk of his car and disposed of them in the river. As part of its case, the government introduced evidence recovered from Chapman's apartment that had blood spatters, which tested positive for Butler's DNA. Other physical evidence from Chapman's apartment, his car, and the crime scene were introduced but not tested for DNA—including a baseball bat, a blood stain on the weather stripping of the car's trunk, the weights and cords that were tied to the victims' bodies, and a black pillowcase recovered near C.B.'s body. Additionally, the government presented eyewitness testimony placing Chapman with Butler and C.B. immediately prior to their deaths and

provided a confession from Chapman to a state prosecutor that the police would find C.B.'s body in the same place they found Butler's body.

On March 18, 1998, the jury convicted Chapman of murdering Butler and C.B., and he was sentenced to death, which was later commuted to life in prison in 2003. Chapman maintains his innocence.

## B. State Post-Conviction Proceedings

In October 2014, Chapman filed a motion in the Illinois state court where he was convicted, seeking post-conviction DNA testing of certain evidence law enforcement gathered during their investigation, pursuant to § 116-3 of the Illinois Code of Criminal Procedure. 725 ILL. COMP. STAT. 5/116-3.[1] Chapman argued for DNA testing of certain evidence that had not been tested and more sophisticated DNA testing— that was unavailable at the time of his trial—of previously tested evidence. Chapman contended this DNA evidence would establish his innocence. On September 19, 2018, the county prosecutor's office informed the Illinois state court that it agreed to DNA testing and submitted to the court an

---

[1] Section 116-3 permits an Illinois state court to issue an order for DNA testing of evidence secured in relation to a prior criminal trial if: (1) the evidence was not previously tested or the evidence can now be tested using methods "not scientifically available at the time of trial that provides a reasonable likelihood of more probative results"; (2) the defendant has made a prima facie case that identity was the issue in the trial resulting in his conviction; and (3) the defendant has made a prima facie case that the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect. 725 ILL. COMP. STAT. 5/116-3(a)(1)–(2), (b)(1)–(2).

agreed order to that effect. The state, in the alternative, advised the court that it could dismiss the petition sua sponte.

At the post-conviction proceeding on Chapman's motion for DNA testing, the Illinois state court refused to accept the parties' agreement and sua sponte dismissed Chapman's § 116-3 motion, finding the evidence presented at trial was "beyond overwhelming" and any further forensic testing would not have changed the outcome of the trial. Chapman appealed, and the state appellate court affirmed. On September 28, 2022, the Illinois Supreme Court denied Chapman's petition for leave to appeal.

### C. Federal Court Proceedings

After the Illinois Supreme Court denied the motion, Chapman filed suit in federal district court against Burke, the Cook County State's Attorney who, as alleged, has "control over access to the evidence" Chapman "seeks to test." Chapman asserted that Illinois's post-conviction DNA testing statute is unconstitutional on its face. Chapman contended the statute is ambiguous, arbitrary, and impossible to administer under the Fourteenth Amendment and violates the Sixth Amendment's right to a jury trial. He sought a declaratory judgment that 725 Ill. Comp. Stat. 5/116-3 is unconstitutional, an injunction against enforcement of the statute, a declaration that he is entitled to DNA testing, and an order directing DNA testing of certain evidence.

Burke moved to dismiss Chapman's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter

jurisdiction under the *Rooker-Feldman* doctrine.[2] In her view, Chapman's injury stemmed from the state court judgment denying his motion for testing, and he was seeking to reverse that judgment in an action before a lower federal court even though only the Supreme Court has jurisdiction to do so. Moreover, she claimed Chapman lacked standing to sue.

The district court dismissed Chapman's complaint on *Rooker-Feldman* grounds. *See generally Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754 (7th Cir. 2024) (en banc). In its view, Chapman was asking the court to nullify the Illinois state court's judgment on his post-conviction motion, which it found *Rooker-Feldman* prohibited. While Chapman had not requested the federal district court to reverse the state court judgment, the district court concluded he was seeking the same relief in federal court that the state court had denied—an order directing DNA testing of the evidence. And granting that relief would reverse the state court judgment, which *Rooker-Feldman* barred. At bottom, the federal district court decided "there [was] no way that Chapman can obtain the relief he [sought] here without nullifying the state court judgment." Consequently, pursuant to *Rooker-Feldman*, it dismissed Chapman's complaint for lack of subject matter jurisdiction.

The parties cross-appealed.

## II.   ANALYSIS

On appeal, Chapman argues the district court erred in dismissing his case on *Rooker-Feldman* grounds. Burke responds

---

[2] Burke also moved to dismiss Chapman's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

that the district court correctly did so, but, in the alternative, Burke also argues that Chapman lacks standing to sue.

We review dismissal of claims for lack of subject matter jurisdiction on standing grounds de novo. *Satanic Temple, Inc. v. Rokita*, 163 F.4th 1061, 1066 (7th Cir. 2026). The same is true for *Rooker-Feldman*. *Gilbank*, 111 F.4th at 765.

### A. Standing

Burke argues Chapman does not have standing to challenge the constitutionality of the Illinois post-conviction DNA testing statute because she did not cause his injury. In Burke's view, her initial representation to the Illinois state court during the post-conviction proceedings that she agreed to DNA testing shows she did not cause Chapman's injury. Thus, she insists Chapman lacks standing because he sued the wrong party.

"Individuals convicted of crimes in state court 'have a liberty interest in demonstrating [their] innocence with new evidence under state law.'" *Gutierrez v. Saenz*, 606 U.S. 305, 314 (2025) (alteration in original) (quoting *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009)). "For that reason, a state-created right to post[-]conviction procedures can, 'in some circumstances, beget yet other rights to procedures essential to the realization of the parent right.'" *Id.* (quoting *Osborne*, 557 U.S. at 68). To that end, where state law permits post-conviction testing of DNA evidence, an individual can file suit in federal court under § 1983 "against a prosecutor who refuse[s] 'to release … biological evidence for testing'" if he alleges the state law "unconstitutionally prevented him from obtaining such testing." *Id.* (second alteration in

original) (first quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011); and then quoting *Skinner*, 562 U.S. at 532).

To seek the withheld evidence, the individual, like all other plaintiffs, must have standing. "Federal courts are courts of limited subject matter jurisdiction, meaning we have authority to hear cases only where authorized by statute and permitted by the Constitution." *Satanic Temple*, 163 F.4th at 1066. Article III of the Constitution requires a plaintiff to have a personal stake in the litigation—"in other words, standing to sue." *Id.* If a party lacks standing, we lack power to hear the case. *Id.* at 1066–67.

To establish standing, the plaintiff has the burden of establishing that he has (1) suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be addressed by a favorable judicial decision. *Id.* at 1067 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). And he must support his standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (quoting *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)). While we recognize two types of standing challenges, only one is relevant here. *Id.* at 1068. And that is "[a] facial challenge," which "asserts that a plaintiff fails to satisfy the requirements of standing on the pleadings, even if the complaint's well-pleaded allegations are taken as true." *Id.*

Burke does not argue Chapman's complaint fails to meet the injury-in-fact and redressability prongs of the standing inquiry—for good reason. The denial of Chapman's request to conduct DNA testing of evidence is sufficient to constitute an

injury in fact. *Reed v. Goertz*, 598 U.S. 230, 234 (2023). And the relief Chapman seeks "would redress that injury by ordering a change in the legal status of the parties and eliminating" an "unlawful justification for denying DNA testing." *Gutierrez*, 606 U.S. at 315–16 (citation modified).

Instead, Burke contests Chapman's ability to meet the requirements of the second prong, typically referred to as causation. *See TransUnion*, 594 U.S. at 423. A "causal connection between the injury and the conduct complained of" must exist for a plaintiff to have standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). That means "the injury has to be 'fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court.'" *Id.* (alterations in original) (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). The causal chain cannot be too attenuated or rest on conjecture. *Dep't of Educ. v. Brown*, 600 U.S. 551, 567 (2023). But "[s]tanding is not always lost when the causal connection is weak, and a defendant's action need not be 'the very last step in the chain of causation.'" *Doe v. Holcomb*, 883 F.3d 971, 978 (7th Cir. 2018) (internal citation omitted) (quoting *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)).

A plaintiff challenging the constitutionality of a state's post-conviction DNA testing statute under § 1983 satisfies the causation prong of standing where the "named defendant" is "[t]he state prosecutor" who denies the plaintiff's request for DNA testing, "thereby caus[ing] [the plaintiff's] injury." *Reed*, 598 U.S. at 234; *see also Gutierrez*, 606 U.S. at 315. A plaintiff seeking post-conviction DNA testing under § 1983, then, has established causation where he sues the "prosecutor" whose

"denial of his request for DNA testing deprive[s] him of his liberty interests." *Gutierrez*, 606 U.S. at 315 (citation modified).

Given these principles, Burke's position that Chapman's injury is not fairly traceable to her fails. It is of no moment that she supposedly agrees DNA testing of the evidence should occur. The focus, instead, is whether she has "denied" Chapman "access to the evidence," *Reed*, 598 U.S. at 234, or "his request for DNA testing," *Gutierrez*, 606 U.S. at 315. Despite Burke's purported willingness to have the evidence tested, Chapman alleges that Burke "has control over access to the evidence" he "seeks to test" and has denied access to test it based on an allegedly unconstitutional statute. Put another way, Burke can agree that the evidence should be tested but still *deny* Chapman's request to do so for one reason or another. "That a prosecutor might eventually find another reason, grounded in [state law] or elsewhere, to deny a prisoner's request for DNA testing," however, "does not vitiate his standing to argue that the cited reasons violated his rights under the Due Process Clause." *Id.* at 319.[3] Burke's argument,

---

[3] We pause to note that at oral argument when pressed about Burke's reason for not testing the evidence despite her supposed readiness to do so, counsel offered nothing more than a verbal shrug. (Oral Argument at 11:00–22:16). Then, without an order from this Court, Burke's counsel filed a post-argument memorandum, explaining that the evidence is impounded and can only be lifted by a judge's order. As an initial matter, counsel filed the memorandum under the guise of Federal Rule of Appellate Procedure 28(j), which provides that "[i]f pertinent and significant authorities come to a party's attention after the party's brief has been filed—or after oral argument but before decision—a party may" file citations to the supplemental authority. Counsel has provided no reason why these citations could not have been brought to his attention prior to oral argument. Rule 28(j) is not a mechanism by which a party can shore up her position after oral argument once weaknesses in the case have been

taken to its logical end, would leave Chapman with only the state court to sue, which is cloaked in absolute immunity for such judicial acts. *Forrester v. White*, 484 U.S. 219, 225–28 (1988). "Article III mandates no such result." *Accord Gutierrez*, 606 U.S. at 321.

Taken together, as alleged, Chapman's injury is fairly traceable to Burke's post-state-court-judgment refusal to turn-over the evidence for DNA testing. That is enough to establish causation for standing purposes here. *Reed*, 598 U.S. at 234; *Gutierrez*, 606 U.S. at 314–16.

**B. *Rooker-Feldman***

Next, the parties dispute whether the district court had subject matter jurisdiction over Chapman's claims on what has become known as the *Rooker-Feldman* doctrine.

Under 28 U.S.C. § 1257(a), Congress vested the Supreme Court with the power to review state court judgments. *Gilbank*, 111 F.4th at 765. "The *Rooker-Feldman* doctrine recognizes that Congress has not authorize[d] 'district courts to exercise appellate jurisdiction over state-court judgments.'" *Id.* (alteration in original) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 644 n.3 (2002)). Accordingly, if the plaintiff's alleged injury resulted from a state

---

exposed. Moreover, the Rule 28(j) memorandum here runs directly contrary to counsel's position at oral argument that it would be legal for Burke to test the evidence despite the state court judge's denial of Chapman's motion under the terms of 725 Ill. Comp. Stat. 5/116-3. (Oral Argument at 22:05–22:16). In any event, as noted above, that a state prosecutor points to another reason, like other state laws, for denying access to, or testing of, the evidence, it does not defeat a plaintiff's standing to challenge the constitutionality of the state's post-conviction DNA testing statute. *Gutierrez*, 606 U.S. at 319–20.

court judgment, federal district courts lack subject matter jurisdiction "to reverse." *Gilbank*, 111 F.4th at 792. That authority lies only with the Supreme Court. *Id.* at 791–92. Named for the duo of cases holding as such, the *Rooker-Feldman* doctrine effectuates this statutory limitation on federal court jurisdiction. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).

By illustration, in *Rooker v. Fidelity Trust Co.*, the plaintiff commenced suit in federal district court seeking to have an adverse state court judgment "declared null and void." 263 U.S. 413, 414 (1923). And in *District of Columbia Court of Appeals v. Feldman*, the plaintiffs litigated before and lost in the D.C. Court of Appeals, the district's equivalent to a state supreme court. 460 U.S. 462, 468–70 (1983). They then sued that court in federal district court, seeking review of final judicial determinations the D.C. Court of Appeals made. *Id.*; *see also Exxon*, 544 U.S. at 285–86 (describing *Feldman*).

In both cases, the Supreme Court noted the parties' federal complaints, under the pretext of federal question jurisdiction, "essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments." *Exxon*, 544 U.S. at 283; *see also id.* at 291–92. Such suits are properly dismissed for want of subject matter jurisdiction because appellate jurisdiction to reverse or modify state court judgments is lodged exclusively in the Supreme Court. *Id.* at 283–84. Consequently, lower federal courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

This doctrine applies only in "limited circumstances." *Id.* at 291; *Gilbank*, 111 F.4th at 765 (citation modified). Narrow application recognizes our "virtually unflagging obligation to exercise the jurisdiction that Congress has granted" and ensures that issues are properly resolved under comity, abstention, preclusion, or other grounds where at all possible. *Gilbank*, 111 F.4th at 765–66 (citation modified).

To strike the right balance, we have held that lower federal courts lack subject matter jurisdiction where (1) a federal plaintiff lost in state court; (2) the state court judgment has become final before the federal proceedings began; (3) the state court judgment caused the alleged injury underlying the federal claim; (4) the claim must invite the federal district court to review and reject the state court judgment; and (5) a federal plaintiff had a reasonable opportunity to raise her federal issue in the state courts. *Id.* at 766. All prongs must be satisfied to divest the federal district court of subject matter jurisdiction. *Id.* at 792.

With respect to the third prong, jurisdiction is lacking only "where … the state-court judgment *itself* caused the alleged injury underlying the claim." *Id.* at 766 (emphasis added). So, jurisdiction exists when there is "an independent prior injury that the state court failed to remedy." *Id.* at 767 (quoting *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016)); *see also Ghelf v. Town of Wheatland*, 132 F.4th 456, 470 n.26 (7th Cir. 2025) (recognizing *Rooker-Feldman* does not bar "claims" that "are independent of the state-court judgment"). In other words, the doctrine does not apply "[i]f a federal plaintiff 'present[s] [an] independent claim,'" even if "the 'same or related question' was earlier aired between the

parties in state court." *Skinner*, 562 U.S. at 532 (second and third alteration in original) (quoting *Exxon*, 544 U.S. at 292–93).

As for the fourth prong, the inquiry turns on determining whether the remedy sought invites the district court to review and reject the state court judgment. *Exxon*, 544 U.S. at 284. We focus "on *what* the plaintiff asks the federal court to do." *Gilbank*, 111 F.4th at 792 (emphasis in original). *Rooker-Feldman* may kick in when "the plaintiff asks a federal court to 'overturn' or 'undo' the state court judgment." *Id.* (quoting *Exxon*, 544 U.S. at 287 n.2, 292–93). On the other hand, *Rooker-Feldman* does not divest lower courts of subject matter jurisdiction simply because a plaintiff's requested remedy in federal court is the same as what she sought in state court. *Skinner*, 562 U.S. at 528, 534. It is only where, "given the relief sought, a plaintiff … seek[s] to reverse a state court judgment" that *Rooker-Feldman* might apply. *Gilbank*, 111 F.4th at 793.

The Supreme Court has twice affirmed these principles in § 1983 cases like Chapman's here. In *Skinner*, the plaintiff lost his bid under the terms of a Texas statute to have DNA testing done on evidence he claimed would exonerate him. 562 U.S. at 528–29. Invoking § 1983, he then challenged the constitutionality of the Texas statute in federal court. *Id.* at 529. *Rooker-Feldman* posed no barrier because the plaintiff, in his federal action, brought a claim independent of the state court judgment. *Id.* at 532–53. That was true even though the plaintiff requested "an order requiring DNA testing," *id.* at 534, which was the same relief he sought in Texas state court, *id.* at 528. *See also Huey v. Kunzweiler for Tulsa Cnty. State Att'y*, 847 F. App'x 530, 533 (10th Cir. 2021) (holding it did not "create a *Rooker-Feldman* problem" in a plaintiff's § 1983 suit

challenging a state's post-conviction DNA testing statute that the plaintiff was "seeking the same relief through this federal action that he was denied in state court"). Because the relief the plaintiff requested in the federal action sought to remedy a prior independent injury stemming from the allegedly unconstitutional Texas statute—not the state court judgment denying the plaintiff's request under the terms of the statute—the action escaped *Rooker-Feldman*'s "shoal." *See Skinner*, 562 U.S. at 531–32.

Likewise, in *Reed*, the plaintiff challenged Texas's law on accessing DNA evidence for post-conviction testing as unconstitutional even though he had previously lost under the Texas state court's application of the statute to the facts of his case. *Reed*, 598 U.S. at 233–34. The plaintiff did not argue he was due relief under the Texas statute but, instead, "target[ed] as unconstitutional the Texas statute [the state court] authoritatively construed." *Id.* at 235 (quoting *Skinner*, 562 U.S. at 532). Thus, *Rooker-Feldman* did not hinder the lower court's subject matter jurisdiction over the plaintiff's claims. *Id.* Moreover, the majority concluded *Rooker-Feldman* was inapplicable, *id.* at 234–35 (majority opinion), notwithstanding the fact that the plaintiff had sought "the same relief" in his § 1983 action that he had previously sought in prior proceedings, *id.* at 246 (Thomas, J., dissenting).

Putting the jurisprudential puzzle pieces together, *Rooker-Feldman* does not bar a plaintiff from invoking § 1983 to challenge the constitutionality of a state's post-conviction DNA testing statute in federal court even if he previously lost his bid to secure DNA testing under the statute's terms in state court. *See Skinner* 562 U.S. at 531–33; *Reed*, 598 U.S. at 234–35. As the Supreme Court has explained, "a state-court decision

is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." *Skinner* 562 U.S. at 532. Because Chapman's § 1983 action falls within the latter category, Burke's attempt to invoke the *Rooker-Feldman* doctrine fails.

Chapman's complaint is not a wolf in sheep's clothing, seeking to plead an independent constitutional claim but using it as a tool to seek review and reversal of the state court judgment. Instead, the entire thrust of Chapman's complaint is that 725 Ill. Comp. Stat. 5/116-3 is unconstitutional. Chapman alleges Illinois's post-conviction DNA testing statute "is unconstitutionally vague, ambiguous, impossible to administer, and deprived [him] of due process." He also asserts § 116-3's "delegation of power to the trial judge, years after a jury verdict, to divine 'the' basis for the jury's verdict, is a deprivation of the defendant's right to a jury trial under the Sixth Amendment." Various other paragraphs in his complaint echo those allegations. At bottom, the allegations in Chapman's complaint that challenge 725 Ill. Comp. Stat. 5/116-3 as unconstitutional, coupled with the conspicuous omission of allegations challenging the state court judgment, remove it from *Rooker-Feldman*'s ambit. Like *Skinner* and *Reed*, *Rooker-Feldman* does not divest the federal district court of subject matter jurisdiction over Chapman's complaint.

### III.   CONCLUSION

Chapman has standing to sue, and *Rooker-Feldman* poses no obstacle to subject matter jurisdiction.[4] For the reasons

---

[4] Burke argues that if we decide Chapman has standing and his claim is not barred by *Rooker-Feldman*, we should find his case is precluded or otherwise lacks merit. We decline both invitations. "*Rooker-Feldman* is not

stated above, we REVERSE and REMAND for proceedings consistent with this opinion.

---

simply preclusion by another name, and questions of preclusion unresolved below are best left for full airing and decision on remand." *Skinner*, 562 U.S. at 533 n.11 (citation modified). And "[w]hether the case may ultimately fail for other reasons" should be "for the district court to determine" on remand when we reverse a district court's dismissal of a case on *Rooker-Feldman* grounds. *Andrade v. City of Hammond*, 9 F.4th 947, 951 (7th Cir. 2021).